Let's wait just a minute and let everyone get settled. Okay, Ms. Little. Margaret Little May it please the Court, I'm Margaret Little of the New Civil Liberties Alliance, representing Christopher Novinger. With me today is Caitlin Schiraldi. Appellants present three questions today, each of which provides independent paths to a remedy. Two are procedural, and I'll make them short. Does the Declaratory Judgment Act provide relief by motion in this circuit? The district court said no, but each of the ways he suggested in getting review of this are barred and foreclosed by law. Secondly, did the district court err in denying declaratory relief for an acknowledged prior restraint? And finally, most importantly, and inescapably, the district court correctly acknowledged there is continuing jurisdiction over these consents, and the SEC has no power whatsoever to gag anyone, ever. And courts have an unflagging duty to be sure that the consent judgments that they preside over do not contain unconstitutional provisions, even upon consent. This is a regulatory penalty unheard of at law. It's an outlier. It's antithetical to the very transparency of the SEC and its mission of the agency. The first question, though, is whether we have appellate jurisdiction. I don't understand how we have appellate jurisdiction. In other words, I don't see how this is, that there's a final appealable order here. It didn't dispose of the entire claim. It was only a partial decision. I believe the district court dismissed our motion in its entirety. Okay. Was the entire action dismissed? No, we filed an appeal. But did the order apply to all of the counts? To guide you a little, if I may, the district court cites the Eleventh Circuit opinion written by Judge Pryor. Thomas, could you speak to why Thomas doesn't say there is no appellate jurisdiction here? I'm afraid that wasn't brief. Well, it is extensively in the district court opinion. Okay. Well, I honestly don't know what to say. I think that there is the point that I should go back to the district court and seek another avenue of relief? No, I think the point there, and you'll understand it because it pertains to various other obstacles, is your client had counsel, he settles the case, there's a condition in it that's disadvantageous to him, but therefore no findings of fact, no trial to a jury, and ultimately then he does challenge that condition through 6dB. He loses. Yes. That's the end of the road. Unless you're saying any person who loses a 6dB can forever say to the government, okay, I hope you're ready to go on that enforcement action because 10 years after finality, I've decided I want to challenge and get back to square one. Well, I think then speaking to this question, Judge Wisdom had an interesting opinion in a case called, let me get this here, Wacker v. Bisson. That was a case where it was an extradition order and the person tried twice to get habeas relief, was unsuccessful. He brought a third claim for declaratory relief, which was successful. So I do not see anything in the district court opinion that foreclosed other avenues of relief. And we thought long and hard before bringing this declaratory relief action. Motion, correct? Motion, that's correct. That's a big distinction. It is a big distinction. I'm very happy to address that. First of all, the Fifth Circuit does allow declaratory relief to be sought by motion. And that's the Gulley decision? No, that's the Castle decision. Also the United Teachers decision that's addressed in our reply brief. So it does allow for these, a declaratory relief action to be brought by motion. Now, the . . . Why wasn't, I guess I'm stuck back on, why wasn't the 60B, once it was reviewed and denied, why isn't that the end of the game? Otherwise, why doesn't law of the case kick in here? The law of the case is really not applicable here in our view. All that the judge decided was that relief is not available under Rule 60B. Not that there is not declaratory relief available. And I have just cited to you a Judge Wisdom decision where an additional attempt using the declaratory relief action was used to secure relief. And in fact, the declaratory relief act is supposed to be liberally construed. And one of the important questions on the standard review before this court is that one of the things that must be considered by an appellate court is the purposes of the declaratory judgment act. And we believe that because this is an unconstitutional condition, nothing is foreclosed here by the fact that we lost on Rule 60B. That's a different question. And Rule 60B, by the way, applies only to final judgments. Declaratory relief. You're not saying there was a change in fact or law. The status quo, that has not been your argument. No, but the district court recognized below that as to consent judgments, there is always continuing jurisdiction, especially when they have prospective effect, which this does. Sure, there's continuing jurisdiction to supervise the consent, but you've got to then allege there was some fact or law to revisit it. Not under the continuing jurisdiction that courts have under consent. Go back to my first question. Would this apply to any plaintiff who loses with a 60B motion? The 60B motion was what, five years ago? Is that when? No, the 60B motion was just about a year, year and a half ago. So the underlying settlement was five years ago? Yes. So what's the end stop for plaintiffs in your client's situation? Anytime they're negotiating a settlement agreement, civil enforcement, they get to keep trying? They get to keep redoing it under your theory? No, my position is not that, Your Honor. My position is anytime a consent judgment has prospective effect and violates a person's protected constitutional rights, a court may review that under a motion for a declaratory relief. Any future dates. So then if you were to prevail, what happens? What's the remand? This really shouldn't be a matter of concern. I know the SEC makes a big deal out of this. But here's the thing. If my client is to prevail, that this is an unconstitutional order, all that happens is that SEC respondents or defendants who have settled with the government get to speak. Like every other American who settles with the government.  You're saying they can't reopen the civil enforcement case. It's over. It's just they get to undo the benefit of the bargain. No. It's that my client gets the benefit of a judicial review of an unconstitutional order. Now, the way that the SEC sets this up is deeply disturbing. First of all, they present papers to the defendants that have a consent in there. If they don't sign that consent, the settlement goes nowhere. The commission will not accept a settlement that does not have a signed consent that weighs a host of constitutional protections. No, but that happens in guilty pleas all the time. Right? Not that you've got to appeal. You've lost your ability to speak to the appellate court because you want the benefit of not going to jail. Here, if he didn't like the terms the government's offering, he just says, okay, I'll put you to your test. He has no opportunity to have a court hear that question. None whatsoever. Well, he gets to say, I want findings of fact or I want a trial by jury. Yeah. He has to go to trial. That's his only option. And the problem with that, and this is addressed by Commissioner Hester Peirce in her dissent which we filed with the court just a few days ago because it came down just a few days ago. That means that the SEC can refuse to settle with people unless they settle, unless they surrender their First Amendment rights. Okay, but let's just— And their only option is to— Remember my example. What we know, close to 100% of criminal cases are resolved by guilty pleas. Yes. Almost every guilty plea says, you're giving up your right to speak to the appellate court. Are all those unconstitutional conditions? No, and here's why. Your criminal settlement is an excellent example. No criminal settlement that I'm ever aware of says that the criminal defendant cannot speak disparagingly about the state's case against him in perpetuity. They don't do that. This is an unconstitutional provision that only two agencies in the United States get, the SEC by an unlawfully promulgated rule, and the CFTC. Every other person who settles with the court can speak as they please about the government's case against them. The Supreme Court has already decided this question in the case of Simon & Schuster. And in that case, they said, son of Sam, a serial killer had free First Amendment rights to speak about his case, and that is what distinguishes this case from yours. There's another distinction, too. Well, but there he's guilty, right? Here, the benefit to your client is he doesn't have to admit violations. But that's— So both sides are benefiting. He doesn't admit it, like a NOLA prosecution, NOLA prose case. At the same time, he can't deny it. Well, that's the kicker. Nobody else says that to anybody, whether they win, lose, or settle. They do not restrict their future free speech rights. But it's an agreement. But it isn't an agreement because of the way it's done. You have to sign the consent, or the enforcement staff will not take it to the— Or they'll prove whether you're guilty or not. Then the world has a judicial determination of guilt, catastrophic for him. He walks away from that. He got a pretty good deal. Well, actually, those people who have been held guilty speak freely on Squawk Box. That was his choice. That isn't his choice. But he had law. Not everyone is as well— Most of these, I mean, these come up in a lot of cases, criminal cases. But the key is, was the choice voluntary? He had counsel, yes or no? Yes, he had counsel. But here's the distinction, and it's a very important one, because it goes to exercise of future free speech rights. I am unaware of any criminal plea bargain that demands that as a condition of settlement. You just heard before a child pornography case. If the people aren't going to jail for the rest of their life, they agree to never have the Internet. They agree to never look at pictures. They agree to all sorts of First Amendment restrictions. How is that different? That is different because— For the rest of their lives. They can't come back in and say, you know, I don't want that provision. This is a systematic requirement across the board required of everyone who settles with the SEC. The government looks with great disfavor, and courts look with great disfavor, on such systematic, programmatic— What about appellate waivers? I keep asking that hypothetical. The appellate waiver is fine because—and our client has waived his right to appeal as to the merits of his claim. Yeah. And so the SEC and other litigation on this very point, they keep saying, well, you can waive your right to trial. Waive your right to a jury trial. Waive your right to confront witnesses. Waive your right to appeal. That's the nature of a settlement. Of course you do those things. But if they ask— Yes, let me ask one question, if I might. Of course. Forgive my voice. The striking difference here is that you have an ongoing contest, and then the defendant wants to end it, and the SEC will do it. We will stop this proceeding. But this is the deal. You have to agree to this. Now, if you don't abide that, then what happens? We just proceed and it undoes the settlement, and you go forward. No, it's not just that. In fact, they can go for criminal contempt. In fact, the SEC has gone after Elon Musk for criminal contempt for violating his gag orders. And furthermore, the D.C. Circuit says that civil and criminal contempt are available to the SEC, even though they denied it in that litigation. Are you saying that the bargain is not that we end the proceeding and you agree not to go forward, but that there's no way to undo that? Well, all I think that this Court needs to declare is that the provision in the required consent— What I'm saying is that if your client is relieved of that, so he can speak freely, the SEC is then free to come back and strike against you on those underlying charges. I think not, because the very provision they required him to sign on his consent was unconstitutional in the ask. You cannot ask a person to surrender a future constitutional right. To continue with my answer to you, Judge Higginson, what if the SEC said, okay, we want peace here. Let's agree that you agree to future warrantless searches of your business. Would that be upheld? I doubt it. I'm not sure why. If you negotiate a guilty plea and you're on conditional release for the rest of your life— That may work in the criminal context. It certainly does not in the civil context. The Constitution speaks to both civil and criminal. That's true. And I don't know why it should work in the criminal context, but in any event, I think if the SEC were to put that provision in its required consents, there would be little doubt that a court would set that aside. It might not take the plea. If it's flagrantly unconstitutional and you object on time, it might refuse the plea. I agree. But if the defendant is saying, Your Honor, please accept this resolution. We don't want to admit to guilt. This is my choice with a lawyer. Well, I only have a few seconds on my opening, but the problem here is in the ask. The government may not ask you to surrender future constitutional rights as a condition of settlement. And the unconstitutional condition cases cited in our brief show that, and neither consent nor waiver cures that. All right. Thank you, Ms. Little. You've saved some time for rebuttal. Mr. Young? Good morning, Your Honors. May it please the Court. A party to a consent decree, quote, is in no position to claim that such decree restricts his freedom of speech. Let's start with appellate jurisdiction. I believe, obviously, neither side or even the parties by consent can't consent to jurisdiction in this court if we have none. But I believe your brief says we have jurisdiction under Section 1291, which would mean that you think the Eleventh Circuit got it wrong in Thomas. You're certainly entitled to say that the Eleventh Circuit got it wrong, but they said that there was no appellate jurisdiction under pretty much identical circumstances to this. So tell us why there's a final appealable order here, unless you want to change your mind about that. Yes, Your Honor. And I'll talk a little bit about the Eleventh Circuit and then a little bit about Article III and whether there's a sufficient injury in fact, because those both go to the court's jurisdiction. Let me start with the Eleventh Circuit. As I understand Judge Pryor's decision, that was a case where there was a consent decree. A litigant then tried to file suit, and when it was argued to him that his lawsuit violated the consent decree, he went back to the First Court and sought clarification that his subsequent action wasn't in violation of the decree. And as I understand Judge Pryor's opinion, what he said was, at most that's a motion to clarify, and the general rule is that motions to clarify don't result in appealable final orders. This court has a similar rule about motions to clarify not resulting in final appealable orders. I think our understanding of this case all along, and this is why we lean so heavily on the law of the case arguments that were discussed a moment ago, is that my friends on the other side aren't really seeking to clarify. They're seeking relief from or to modify, which is the office of a Rule 6db motion, which they already appealed and lost. So that's why in our brief we said we think the better analogy here is to the line of cases that say the denial of a Rule 6db motion does result in an appealable final order, and that's why they can appeal here. But if the court felt that this was more like a motion to clarify than a motion for relief from and were to determine that on that basis there was no final order here, that would be a perfectly acceptable resolution of the case. But how is it more on that spectrum? They already had the 6db appeal. We did have jurisdiction over that. Now they file the procedural nullity in district court. I think the way that we conceptualized it when we wrote the brief is imagine instead of going back to district court and filing a declaratory judgment motion, they would have just filed another Rule 6db motion. I think the district court would have said under the mandate rule I can't provide relief. I think that could have been appealed. And then I think the court would have said the district court was right. Under the mandate rule it couldn't have applied relief. And indeed that was the argument that we made here. We think the substantive claim is absolutely identical. Their argument under Rule 6db-5 was we believe this settlement provision is causing us First Amendment harms under principles of equity. Please declare that it no longer applies to us. And this court said that that wasn't a sufficient basis for relief. And then they just repackaged that under the Declaratory Judgment Act and sought identical relief. And so that's why we say there's jurisdiction we think. Unless the court, like Judge Pryor, were to think of that as a motion to clarify versus a motion for relief. We just think that the court's prior opinion completely resolves the case. I said in response to the court's question about jurisdiction I'd also talk a little bit about Article 3. One of the many problems in this case, and the attorney in the first argument for the Department of Justice talked about an interrogation as a chess match. I'll bring the analogy forward. It is true that the Declaratory Judgment Act permits litigants to sometime clarify their rights in an anticipatory posture. But cases like Calderon against Ashmus and Kaufman versus Breeze Corp. We think stand for the proposition that while a litigant can use the Declaratory Judgment Act to go say one chess move ahead you can't go three or four steps ahead. Because at that point it becomes a hypothetical case where any opinion would be advisory. And we think that's the situation the court is also confronted with here. There has been no breach. If there were a breach the commission would then have to make a decision about whether or not to enforce. And then as the parties agreed upon in the consent judgments themselves what happens then if the commission does move to enforce is it goes before a district court judge who would have to make a determination applying the Rummery Balancing Test. None of that has happened. So that's an independent basis if the court wanted to kick the case on jurisdictional grounds it could do so under Article 3 in addition to the path that Judge Pryor outlined. The quote that I was beginning with, Your Honor, was a quote from the Seventh Circuit to the effect that somebody is in no position to complain of the loss of free speech rights if they themselves have agreed in a consent document to waive those rights. That was a case from 1947. There is nothing unusual as the court indicated a moment ago about a litigant in exchange for an end to litigation waiving a constitutional right up to and including First Amendment rights. And there are courts who have affirmed even under Rummery Balancing the ability of the government to seek those kinds of waivers in certain cases. So this is not some kind of strange outlier. And exactly as Your Honor indicated a moment ago there is a reason that Section 78 of the Second Restatement of Judgments says if you want to challenge a judgment, your path is Rule 60, it's not the Declaratory Judgment Act. Because if a litigant could use the Declaratory Judgment Act to either seek relief from a judgment or to try to rectify an error in a judgment then the rational system of rules and procedures under both the civil rules and the appellate rules evaporates. There are no timeliness rules. A litigant could come in any time and try to attack a final judgment. And it has been the law since very shortly after the Declaratory Judgment Act was passed in 1934 that whatever else the statute allows, it does not allow for error correction in a final judgment. A litigant either has to appeal, or having foregone the right to appeal, a litigant has to bring a Rule 60B motion. Why is this like no low contendory pleas? Where they don't admit the crime, but they admit there's sufficient facts. My understanding is once a defendant resolves a criminal case that way they could go out and deny it as much as they want. I've never seen the government go after them for contempt. And I don't even think if they go deny it, the government can re-prosecute. I think that would be barred by double jeopardy. Isn't that the better analogy here? I have a few reactions, Your Honor. Because this is, we don't admit it, but we don't deny it, right? That's basically what the... That's right. And I think that's... There's no admission at all, right? The litigation is ended, and the agreement that is made is I will not create the impression that the allegations in the complaint had no... No guilt determination. That's exactly right. None at all. And so that's why, and that's exactly why the Commission bargains for this particular provision. The Commission's interest here is in obtaining findings of facts and conclusions of law if an impression is created in the marketplace that one of its enforcement actions is without factual basis. So that remedy is very closely tied to the interest. And there's nothing unusual about that kind of waiver in the context of settlement agreements or plea agreements. I'll perhaps end simply by saying this. Even if the court were uncomfortable saying that this kind of maneuvering was directly barred under the law of the case doctrine, because it felt like there was some play in the joints between Rule 60B and the Declaratory Judgment Act, this court has the Humanetics Decision on its books, which, like the Sixth Circuit in Goodyear, addressed a situation where a litigant tried to undo a judgment alleging fraud under Rule 60B-3, lost that on appeal. The litigant then turned around and filed an independent equitable action for relief, which is an ancient device that also allows a litigant to go into court and challenge a judgment for fraud. And what both this court said and the Sixth Circuit said was, you can do one or the other. You can do Rule 60B or some kind of independent maneuver, but you absolutely cannot do both in sequence. And that is exactly the situation that is presented here. And for that, among the many other procedural defects we discuss in our brief, we ask the court to affirm. All right. Thank you, Mr. Young. Ms. Little? I apologize for my earlier start. I thought you were referring to some decision by Justice Thomas, and the Thomas case was not in the forefront of my mind. But the Thomas case is an out-of-circuit case. And contrary to Thomas, the Eleventh Circuit case, the Fifth Circuit allows motions for declaratory relief. But going to the jurisdictional question, there is no question that courts have continuing jurisdiction over consent decrees. Judge O'Connor below conceded that. And courts have a continuing duty to be sure there are not unconstitutional provisions in those decrees. We have cited the City of Miami case and the League of Latin American Voters case, where the courts in this circuit have held that the consent of the party do not sanction otherwise unconstitutional provisions. And that is our best and winning avenue of appeal. This is not something the SEC has any power to order under the provisions of the securities laws. The problem is in the ask. You cannot ask someone to do something that violates their constitutional rights as a condition of doing business with the government. There's a huge line of cases on this. The Coons decision, the Velazquez conditions, and in particular, a surrender of First Amendment rights. That is forbidden. And consent doesn't cure it. So Mr. Young referred to, what is it, a 1947 Supreme Court opinion? What was that? You heard him say it. I did, and I didn't write. I'm sorry. I was writing. I don't remember the decision. I'd be happy to address it if you'd name it. All right, well, go ahead. Okay. But again, under the continuing duty of courts to supervise consent decrees and to be sure that they do not contain unconstitutional conditions, we have had jurisdiction at the district court as conceded by Judge O'Connor, and we have jurisdiction here. Nothing in the securities acts permits the SEC to gag anyone. They are allowed to issue injunctions against future violations of the securities law. Truthful speech is not a violation of the securities laws. This lifetime gag is unknown to any other agency. And all that would happen if this court were to correctly rule in my client's favor is that people could then speak. There would be no floodgates. This is no earth-shattering decision. This is simply restoring Mr. Novinger and every other person of whom an unconstitutional demand was made, that they get to speak just as the son of Sam could speak about his crimes. And so what is the anomaly here is the demand that you get. The real problem with your argument, if we can even reach it on the merits, is you are also saying they can't even reopen the civil enforcement matter. So you're saying, why wouldn't everyone in Mr. Novinger's position want to do it? Fine, I'll take the no admit, no deny, walk away from the civil enforcement. Five years later, you say, oh, guess what, now I can deny it. Plus, you can't reopen your case. Your Nolo example was an excellent one. Nothing, the Department of Justice doesn't demand it. But there's no guilt determination. The litigants not trying to undo the guilt. But here's another thing that this consent demands. If you say I didn't, don't admit these crimes, you are required by that consent to say also, but I don't deny it either. That's compelled speech, and that is forbidden by the Supreme Court. This is an anomalous, unconstitutional condition that does not exist in any other federal agency, and it needs to be put to correct an early death. All right, thank you, Ms. Little. Your case is under submission. Last case for today, consent.